UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Michael Pope, Jr., | ) |
|   Plaintiff, | ) |
| v. | ) 2:21-cv-00467-LSC |
| Warren Cook, et al., | ) |
|   Defendants. | ) |

**MEMORANDUM OF OPINION**

Michael Pope Jr. ("Pope") brings this § 1983 action against Reginald Rambo ("Officer Rambo") and Warren Cook ("Officer Cook"). Pope claims that Officers Rambo and Cook violated his Eighth Amendment rights by failing to protect him from the violent attacks of fellow inmates.[1] The Defendants invoke qualified immunity and seek summary judgment. For the reasons set forth below, the Defendants' motion is due to be GRANTED.

**I.   BACKGROUND**[2]

---

[1] Pope also brings an excessive force claim against Officer Rambo and Lieutenant Carl Sanders, but "Pope does not contest summary judgment as to the excessive force claim." (Doc. 38 at 17.) Accordingly, this claim is due to be dismissed without further discussion.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary

During the events that give rise to this case, Pope was an inmate at Donaldson Correctional Facility—a maximum security state prison in Bessemer, Alabama. (Doc. 26 at 2.) Pope was confined within the prison's V block, which "houses inmates with many past rule violations and potential mental health issues." (*Id.*) As described below, Pope's failure-to-protect claim arises from two separate incidents. (*Id.* at 3–4.)

**A. First Incident**

One afternoon, Officers Rambo and Cook were passing out meal trays to the V-block inmates. (Doc. 28-2 at 17.) Each cell door had a special tray door for this purpose, but many of the tray doors—such as Pope's—were defective and would not easily open.[3] (*Id.* at 18; doc. 28-1 at

---

judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

[3] In his deposition, Pope stated that his "tray door wouldn't open" because "[i]t was stuck." (Doc. 28-1 at 9.) In a declaration submitted with his brief, he claims that "[t]he tray slot was tight but you could open it if you wanted to." (Doc. 37-1 at 2.) The Court does not credit Pope's declaration because he does not explain the "the inherent inconsistency" between his deposition testimony and declaration. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) ("The law in this circuit is that a party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction.") (citation and internal quotation marks omitted); *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012) ("A district court may

9.) In such cases, correctional officers had to either open the cell door or slide the tray under the door. (Doc. 28-2 at 18.)

When Officer Rambo opened Pope's cell door to give him a meal tray, an inmate named DeMarkules Williams reached around Officer Rambo and stabbed Pope in the neck with a handmade weapon. (Doc. 28-1 at 9–10.) Officer Rambo pushed Pope into his cell, and Williams retreated from the scene of attack. (*Id.*) Officer Cook (who was a cell or two away when Williams stabbed Pope) handcuffed Williams and secured him in his cell. (Doc. 28-3 at 12.) Officer Rambo accompanied Pope to the infirmary. (Doc. 28-1 at 10.)  Before this incident, Pope did not know Williams, and the officers were unaware of any bad blood between the two inmates. (*See* doc. 28-1 at 10; 28-2 at 18; 28-3 at 11.)

It is unclear how Williams escaped from his cell. Generally, inmates at Donaldson escape from their cells by putting a small object—known as a "trick" in prison vernacular—in the locking mechanism of the cell door. (*See* doc. 28-1 at 10; 28-2 at 10–11.) Among other things, inmates would use toothpaste caps, small wads of toilet paper, and pieces of cardboard

---

disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact.").

as "tricks." (Doc. 28-1 at 10; 28-4 at 8.)

### B. Second Incident

Approximately two months after the Williams attack, inmate Adrian Dunning and Pope "had words" in the exercise yard. (Doc. 28-1 at 12.) During the exchange, Dunning apparently threatened Pope, but officers intervened and separated them. (*Id.*) A few minutes later, Dunning returned and stabbed Pope from behind with a large handmade weapon. (*See* doc. 28-3 at 13.) Dunning then threw the weapon to the ground before correctional officers secured him. (Doc. 28-1 at 12–13.) Officer Cook described the weapon as "maybe a little bit bigger than [his] hand." (Doc. 28-3 at 13.) As with Williams, Pope did not know Dunning prior to the stabbing, and Officers Rambo and Cook were unaware of any animosity between the two inmates. (Doc. 28-1 at 17–18; 28-2 at 15; 28-3 at 11.)

Before inmates were permitted in the exercise yard, Officer Rambo handcuffed them behind their backs and frisked for weapons, another officer shackled their legs, and Officer Cook inspected them with a handheld metal detector. (*See* doc. 38 at 8.) To evade this protocol, inmates often hid weapons near the groin or rectum, and inmates had

devised various ways of slipping out of their handcuffs. (Doc. 28-4 at 12.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the

nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)).

In a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

"[T]o state an Eighth Amendment claim premised on a failure to prevent harm, a plaintiff must allege facts showing that: (1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). "The second element—whether the defendant was deliberately indifferent to that risk—has both a subjective and an objective component." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). "A prisoner must establish both that [1] the defendant actually (subjectively) knew that [the prisoner] faced a substantial risk of serious harm and that [2] the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable

manner." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (alterations in original; citation and quotation marks omitted).

With the exception of a footnote, Pope devotes the entirety of his argument to this theory: a reasonable factfinder could infer that Officers Rambo and Cook were complicit in both attacks.[4] This inference is sound, he claims, because the two stabbings could not have occurred (absent a series of improbable events) unless the Officers had a hand in them. In response, the Officers assert that Pope's theory rests upon an improper transplantation of *res ipsa loquitur* into the realm of deliberate indifference. (*See* doc. 39 at 2–3) ("[T]he bold inferential leaps Pope asks this Court to make have no analogue in Eleventh Circuit precedent and are a poor substitute for the evidence of deliberate indifference it is his burden to produce at summary judgment.").

To a large extent, Pope's own testimony undermines his theory. When asked if Officer Cook "had anything against" him during either

---

[4] In a footnote, Pope offers an alternative to his complicity theory. He claims that "[i]f Rambo and Cook did pat down and wand Dunning as they claim, a jury could infer that they discovered the weapon and did nothing about it. This theory of notice of a serious risk would also defeat the motion for summary judgment." (Doc. 38 at 22 n.1.) Pope does not flesh out this other theory, so the Court cannot properly evaluate it. Pope bears the burden of showing a violation of his clearly established constitutional rights, and he does not attempt to meet his burden with respect to this alternate theory. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012).

incident, he replied no. (Doc. 28-1 at 13.) When asked if Officer Rambo had anything against him, Pope said no for the Williams incident but yes for the Dunning incident. (*Id.* at 13; 17.) More importantly, Pope's theory lacks sufficient evidentiary support. He does not provide enough context for his claim that the attacks were too improbable without the Officers' assistance.

The record reflects that Donaldson Correctional Facility is a violent place, and its inmates have contrived clever ways to evade the prison's security measures. (*See* doc. 28-2 at 8, 22–23.) Unfortunately, prison attacks are not uncommon. Without more context as to how unlikely the stabbings were, a factfinder could not justifiably conclude that the Officers' complicity was the cause. To be sure, a prison official's "knowledge of a substantial risk [of serious harm] is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). But given the context of a violent prison, an inference of complicity is simply too speculative in light of the record as it stands. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982) ("[A] a

jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility.").

The Court believes that acceptance of the complicity theory in this case would undermine the deliberate indifference standard. Prison attacks, of course, are never supposed to happen, and prison authorities are frequently at a loss to explain how the perpetrators carry out the attacks. In such cases, the complicity of prison guards would often be presented as a possible explanation. But factfinders cannot render verdicts based on guesswork. Plaintiffs must uncover sufficient evidence (circumstantial or otherwise) to survive summary judgment. Pope has not done so. *Cf. Helene Curtis Indus., Inc. v. Pruitt*, 385 F.2d 841, 851 (5th Cir. 1967) ("The line of demarcation which [courts] are required to walk is ephemeral: We must conclude that an inference is unreasonable without falling into the trap of weighing all the evidence . . . .").

## IV.  CONCLUSION

For the foregoing reasons, the Defendants' motion is due to be GRANTED. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on May 30, 2023.

_____
L. Scott Coogler
United States District Judge
211211